RICHARD D. EMERY
ANDREW G. CELLI, JR.
MATTHEW D. BRINCKERHOFF
JONATHAN S. ABADY
EARL S. WARD
ILANN M. MAAZEL
HAL R. LIEBERMAN
DANIEL J. KORNSTEIN
O. ANDREW F. WILSON
ELIZABETH S. SAYLOR
KATHERINE ROSENFELD
DEBRA L. GREENBERGER
ZOE SALZMAN
SAM SHAPIRO

# EMERY CELLI BRINCKERHOFF & ABADY LLP

ATTORNEYS AT LAW
600 FIFTH AVENUE AT ROCKEFELLER CENTER
10TH FLOOR
NEW YORK, NEW YORK 10020

TEL: (212) 763-5000
FAX: (212) 763-5001
www.ecbalaw.com

CHARLES J. OGLETREE, JR.
EMERITUS

DIANE L. HOUK
JESSICA CLARKE

ALISON FRICK
DAVID LEBOWITZ
DOUGLAS E. LIEB
ALANNA KAUFMAN
EMMA L. FREEMAN
DAVID BERMAN
ASHOK CHANDRAN
MICHELE YANKSON

April 16, 2019

**BY EMAIL AND HAND**

The Honorable Peggy Kuo
United States District Court
  For the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:    *In re Tara Demetriades*, 17-MC-300 (sealed)

Dear Judge Kuo:

Our firm represents Tara Demetriades, Esq., and the following constitutes our submission on sanctions, as directed by the Court. The submission is divided in two parts. First, we respond to the discussion of applicable case law in the Committee's submission on sanctions dated March 19, 2019. Next, we discuss relevant mitigating factors, based on the American Bar Association's ("ABA") *Standards for Imposing Lawyer Sanctions* (1992).

### A. **The Case Law Supports a Public Reprimand**

#### a. *Gluck*'s Imposition of a Reprimand Supports A Reprimand Here, Because Ms. Demetriades' Misconduct is *Less Severe* Than Mr. Gluck's

In the Committee's submission to the Court dated March 19, 2019 ("Comm. Br."), the Committee correctly notes that *Matter of Gluck*, 114 F.Supp.3d 57 (E.D.N.Y. 2015)—where the

EMERY CELLI BRINCKERHOFF & ABADY LLP
Page 2

Court determined that a reprimand was the appropriate sanction—has similarity to the instant case, in that both cases involved misconduct related to case management, which implicated multiple disciplinary rule violations.  The Committee also observes that Ms. Demetriades, as in *Gluck*, has identified mitigating factors that she argues weigh against the imposition of a more serious sanction.  Although the Committee argues that there are important differences between the instant case and *Gluck*, and that certain factors "arguably weigh in favor of a punishment more severe than the punishment in *Gluck*" (Comm. Br. at 3),[1] Ms. Demetriades submits that, for the reasons discussed herein, a reprimand is the appropriate sanction here as well.  Indeed, the underlying misconduct in *Gluck* is plainly more serious than the instant case, and the mitigation less compelling,

For example, in seeking differences between *Gluck* and the instant case, the Committee contends that Gluck arguably deserved a less severe sanction because, unlike Ms. Demetriades, he apparently demonstrated that he "frequently handle[d] social security and workers' compensation matters with no expectation of compensation."  Comm. Br. at 3, citing *Gluck*, 114 F.Supp. at 61.  However, it seems that Gluck may have handled social security matters with no expectation of compensation for the simple reason that he would fail to file opposition or cross motion papers, resulting in the Court finding for the defendant.  *See, e.g.*, *Gluck*, 114 F.Supp.3d at 59, citing *Caiozzo v. Commissioner of Social Security*, 2:11–CV–02461–JS (granting defendant's motion for judgment on the pleadings after Gluck failed to file opposition or cross

---

[1] To the extent the Committee may be arguing in favor of a more severe "punishment," the New York Court of Appeals has long held that the purpose of lawyer discipline is *not* "punishment."  Rather,

> [t]he proper frame of reference . . . is the protection of the public interest, for while a disciplinary proceeding has aspects of the imposition of punishment on the attorney charged, its primary focus must be on the protection of the public.

*Matter of Levy*, 37 N.Y.2d 279, 282, 372 N.Y.S.2d 41, 44 (1975); *see also Ryan v. Opdyke*, 143 N.Y. 528 (1894); *Matter of Mitchell*, 40 N.Y.2d 153, 386 N.Y.S.2d 95 (1976).

motion papers).

Further, an analysis of Gluck's cases referenced in the Court's opinion reveals conduct much more egregious than that of Ms. Demetriades. In short, whereas the Committee presented absolutely no evidence that Ms. Demetriades's conduct resulted in financial harm to a client—and where no client ever complained about any conduct on the part of Ms. Demetriades—Gluck's misconduct often had severe financial repercussions for his clients, who had brought actions to recover substantial damages and other relief. For example, the Court granted summary judgment in favor of the defendant employer in a case where Gluck failed to file opposition papers on behalf of his client. In that case, the client was seeking back pay with prejudgment interest, and other affirmative relief including, but not limited to, front pay, reinstatement, and compensation for past and future pecuniary and non-pecuniary losses resulting from unlawful employment practices. *Gluck*, 114 F.Supp.3d at 59 (citing *Levitant v. The City of New York Human Resources Administration, et al.,* 1:08–CV–03979–KAM–MDG). Similarly, the Court dismissed the client's lawsuit in another case, where the client was seeking substantial damages and benefits, when Gluck failed to pay sanctions against him for failure to appear. *Id.* (citing *DeMarco v. Hartford Life and Accident Insurance Co.,* 1:12–CV–04313–BMC). *See also id.,* citing *Levitant v. The City of New York Human Resources Administration, et al.,* 1:05–CV–00230–KAM–JO (conditionally granting defendant's motion for a new trial based upon several improper statements Gluck made during summation on behalf of plaintiff in direct contravention of Court's prior rulings).

There is another significant difference between *Gluck* and the instant case. Unlike Ms. Demetriades's matter, the Court found that Gluck had violated Rule 1.4, which provides that a lawyer shall "keep the client reasonably informed about the status of the matter" and promptly

EMERY CELLI BRINCKERHOFF & ABADY LLP
Page 4

inform the client of "material developments in the matter," among other things. The Court found ample evidence that Gluck failed to fulfill his obligation to communicate with his clients. *Gluck*, 114 F.Supp.3d at 60, citing, as one example, *DeMarco v. Hartford Life and Accident Insurance Co.*, 1:12–CV–04313 (plaintiff, appearing *pro se*, moved to reopen her case on the grounds that Gluck had abandoned her lawsuit and further claimed that she repeatedly, and unsuccessfully, attempted to reach Gluck by phone and to visit him at his office, and that Gluck never told her that her case had been dismissed). In fact, Gluck admitted that "[a] number of clients advised that they had difficulty in being able to contact me in late 2012 and 2013," and the Court found that Gluck's failure to promptly contact his clients regarding critical developments in their cases was unacceptable and warranted the imposition of disciplinary sanctions. *Id.* To reiterate, there was no such disciplinary charge against Ms. Demetriades. To the contrary, the record reflects that no client made any such complaints about Ms. Demetriades.

The Committee also failed to acknowledge another significant difference between *Gluck* and the case at bar. As noted in the Court's opinion in *Gluck*, the Committee issued an order to show cause in May 2014, tracing Gluck's "extensive history of misconduct" in federal actions dating back to January 2005, ***a period of over nine years***—a much more extensive period than in the instant case. *Gluck*, 114 F.Supp.3d at 58. In addition, the Committee erroneously claims that the misconduct in *Gluck* "could all be categorized as the product of professional negligence." Comm. Br. at 3. Pointedly, however, the Court rejected Gluck's claim that "he acted appropriately in failing to prosecute many of the actions [referenced in the Court's opinion]" because he "had significant reservations about the viability" of those matters or "believed the parties would settle," i.e., he *intentionally* failed to prosecute actions that were ultimately dismissed. *See Gluck*, 114 F.Supp.3d at 61.

EMERY CELLI BRINCKERHOFF & ABADY LLP
Page 5

**B.  Other Cases Also Support Nothing More Severe than a Public Reprimand**

The Committee cites another case, *In re Agola*, 484 Fed.Appx., 594 (2d Cir. 2012), where

the Court determined that a reprimand was appropriate.  In *Agola*, the Second Circuit found that

the attorney had failed to comply with the Court's scheduling orders and deadlines in 21 cases,

causing the dismissal of seven cases based on her default in the Circuit, as well as other failures

in the District Court.  The Committee states that "the bulk of the district court misconduct in that

case came down to sloppy or negligent preparation of legal submissions."  Comm. Br. at 3.  Yet,

the Committee fails to acknowledge a much more troubling aspect of Agola's wrongdoing,

involving bad faith and misleading the Court.  The text of the July 2010 Referral Order,

appended to the Second Circuit's Opinion in *Agola* as "Appendix 1," states the following, in

pertinent part:

> In [a] second case, Judge Larimer dismissed the plaintiffs' complaint filed
> by Agola, for failure to sufficiently plead their claims, and denied Agola's
> motion to amend the complaint, finding that the proposed amendment was
> frivolous and brought in bad faith. *See Johnson v. University of Rochester
> Medical Center*, 686 F.Supp.2d 259, 270–71 (W.D.N.Y.2010) (noting that
> the publication of an allegedly defamatory document "had been procured
> and orchestrated entirely by [Agola]," a fact that was "glaringly omitted"
> from the proposed amended complaint). Agola was later sanctioned
> $8,399 for that conduct. *See Johnson v. University of Rochester Medical
> Center*, 715 F.Supp.2d 427, 430–31 (W.D.N.Y.2010) *("Given the bad
> faith inherent in counsel's attempt to place facts in a pleading which she
> knew firsthand to be misleading at best and utterly untrue at worst, and
> counsel's inexplicable refusal to withdraw the frivolous claims for
> nearly a year, even after their baselessness had been precisely identified
> and briefed by defendants, I find that an award of monetary sanctions is
> appropriate in this case.")*. *See also Barkley v. Pennyan School Dist.*,
> 2009 WL 2762272, *1 n. 1 (W.D.N.Y. Aug. 25, 2009) (Telesca, J.)
> (criticizing response to summary judgment motion).

*Agola*, 484 Fed.Appx. 594 at **4 (emphasis added).

Similarly, the text of the July 2010 Referral Order states the following, in pertinent part:

> In a fifth case, Judge Siragusa sanctioned Agola's law office $5,000 for

> pursuing a claim "that was clearly not warranted by the facts of th[e] case, or by existing law or a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law."

*Id.* at \**3 (citing *Geiger v. Town of Greece*, 2008 WL 728471, \*5 (W.D.N.Y. Mar. 18, 2008).

*Agola* is particularly relevant to the determination of an appropriate sanction in Ms. Demetriades's case. In *Agola*, the Second Circuit held that *a public reprimand was appropriate discipline,* notwithstanding the "bad faith inherent in counsel's attempt to place facts in a pleading which she knew firsthand to be misleading at best and utterly untrue at worst." *See id.* at \**4. In the Committee's discussion of *Gluck*, where the Court also held that *a public reprimand was appropriate discipline,* the Committee contends, notwithstanding the similarities with Ms. Demetriades' case, that a factor weighing in favor of a more severe sanction concerns the finding that Ms. Demetriades had made a false statement of fact to the Court regarding attorney Marilyn Pierre's status with Ms. Demetriades's firm. *See* Comm. Br. at 3. While Ms. Demetriades recognizes the seriousness of making any false statement to the Court, we respectfully submit that Agola's bad faith in attempting to place facts *in a pleading,* which facts she knew firsthand to be misleading at best and "utterly untrue" at worst, is arguably more serious than Ms. Demetriades's statement concerning Ms. Pierre's status, and yet the Court found that a public reprimand was an appropriate sanction in the *Agola* matter.

In *Matter of Liotti*, 111 A.D.3d 98 (1st Dep't 2013), the First Department imposed a Public Censure for a violation of Rule 3.3(a)(1), among other offenses.[2] Pursuant to the reciprocal discipline provisions of 22 N.Y.C.R.R. § 603.3, Liotti was publicly censured based upon a Public Admonition imposed by the United States Court of Appeals for the Fourth Circuit for misconduct committed before that Court in connection with a criminal appeal, including the

---

[2] The Court's decision does not acknowledge any mitigating factors.

attorney's misconduct in misrepresenting certain matters to the court, failing to correct a prior misrepresentation of material fact, and impugning the character of a U.S. District Court Judge without any factual support. *In re Liotti*, 667 F.3d 419 (4th Cir. 2011). To summarize, the Fourth Circuit found that Liotti: improperly joined unrelated quotations of a witness's testimony in his brief so as to give the appearance that he was citing to a continuous stream of testimony; accused the trial judge, without factual witness support, of suppressing evidence; wrongly accused the government of purposely overestimating the anticipated length of the trial in order to defeat his motion to change venue; submitted and relied on a declaration to support the legitimacy of a purported online conversation about which he had no personal knowledge; and asserted without factual support that two Secret Service agents involved in the investigation of his client had been terminated for misconduct. Again, without diminishing the seriousness of Ms. Demetriades's violation of Rule 3.1(a), we submit that Liotti's misconduct was more serious. Nevertheless, both the Fourth Circuit and the First Department determined that the appropriate sanction was a Public Censure/Admonition.

The Committee cites *Matter of McGrath*, 153 A.D.3d 1258 (2d Dep't 2017) as an example of a case where the Court imposed a six-month suspension for neglect, in violation of Rule 1.3(b); failure to inform clients, in violation of Rule 1.4(a)(3), and conduct that adversely reflects on the lawyer's fitness as a lawyer, in violation of Rule 8.4(h).[3] *See* Comm. Br. at 4. But as the Committee acknowledges, none of Ms. Demetriades's clients were harmed as significantly as the clients in *McGrath*. The clients retained McGrath to bring an action on their behalf seeking significant damages. After commencing the lawsuit, McGrath essentially abandoned the clients and the Court dismissed the action. *McGrath*, 153 A.D.3d at 1259-1260.

---

[3] The Committee's summary fails to mention that McGrath violated Rule 8.4(h).

Moreover, several other key factors markedly distinguish *McGrath*. A principal aggravating factor in *McGrath* was the attorney's "extensive disciplinary history." *McGrath*, 153 A.D.3d at 1260. Thus, in addition to the Admonition acknowledged by the Committee, the Court had previously imposed a Public Censure for not cooperating with the Grievance Committee's investigations of two complaints. In addition, the Grievance Committee had cautioned McGrath twice for not keeping his clients informed, misconduct that McGrath repeated in the new matter.

The Committee also mischaracterizes the mitigating factors in *McGrath*. Specifically, the Committee asserts, as a mitigating factor, McGrath's "longstanding problem with alcoholism, and his success at obtaining sobriety." Comm. Br. at 4. In fact, although McGrath asked the Court to take that into consideration as a mitigating factor, the Court expressly rejected it, noting that "no medical testimony or documentation was submitted at the hearing to support the respondent's contention," and that in a prior disciplinary proceeding "the respondent raised various mitigating factors, but alcoholism was not one of them." *McGrath*, 153 A.D.3d at 1261.

The next case cited by the Committee is *Matter of Dinhofer*, 257 A.D.2d 326 (1st Dep't 1999). Comm. Br. at 4. In *Dinhofer*, the U.S. District Court for the Southern District of New York imposed a Public Censure, but the First Department, in a subsequent reciprocal discipline proceeding, imposed a three-month suspension, based on violations of DR 1-102(A)(5), DR 1-102(A)(8), and DR 7-106(C)(6) of the former New York Lawyer's Code of Professional Responsibility, the precursor rules to Rules 8.4(d), 8.4(h), and 3.3(f)(2). The Committee asserts that "one component of Ms. Demetriades's conduct is analogous to the attorney's in *Dinhofer*" (Comm. Br. at 4), which was based on derogatory, undignified and inexcusable comments to Judge Preska in a telephone call. Although Ms. Demetriades acknowledges that she violated Rule 3.3(f)(2) by behaving inappropriately at a December 28, 2016 court conference, her conduct

was hardly "analogous" to the attorney's conduct in *Dinhofer,* where the attorney accused Judge Preska of "rampant corruption," called her "blatantly corrupt," and stated "this is a sham" and "I'm rude to you because I think you deserve it. You are corrupt and you stink." *Dinhofer*, 257 A.D.2d at 327-328. Ms. Demetriades responded intemperately to Judge Mann when she contacted Ms. Demetriades by telephone, but her comments in no way rise to anywhere near the level of the incivility in *Dinhofer.* Moreover, Ms. Demetriades has apologized for any comments that the Court perceived as discourteous, which was unintended.

In comparing the conduct in the instant case to the behavior in *Dinhofer*, Ms. Demetriades also submits that the Court should take into account a significant mitigating factor. As Ms. Demetriades explained at the evidentiary hearing, she was under "extreme stress tending to the medical needs" of her dog, a companion for over 14 years, who was put to sleep a few weeks after the conference. Tr. 370. Indeed, she had sent Ms. Pierre to the court conference in her stead precisely because she knew she was not emotionally equipped to handle a conference that day. Tr. 371-72. As a result, when Judge Mann contacted her by telephone, Ms. Demetriades was very stressed and responded discourteously. Although this factor does not excuse Ms. Demetriades's conduct, we respectfully submit that this mitigating circumstance further distinguishes her case from *Dinhofer*.

Ms. Demetriades also calls the Court's attention to *Matter of Hayes*, 7 A.D.3d 108 (1st Dep't 2004), where the Court imposed a Public Censure for discourteous conduct under the precursor rule to Rule 3.3(f)(2). In *Hayes*, the attorney accused the judge and a court clerk of prejudice and racism after an unfavorable ruling. Moreover, the attorney had two prior Admonitions: one for neglecting client matters, and another for engaging in discourteous and undignified conduct similar to the new violation. *See also Matter of Delio*, 290 A.D.2d 61 (1st

Dep't 2001) (Public Censure for disrespectful comments to judge); *Matter of Schiff*, 190 A.D.2d 293 (1st Dep't 1993) (Public Censure for directing vulgar, obscene, and sexist epithets toward opposing counsel at deposition); *Matter of Teague*, 131 A.D.3d 268 (1st Dep't 2015) (3-month suspension with requirement to attend anger management treatment; attorney exhibited marked lack of respect for administrative law judge, and repeatedly spewed racist, sexist, homophobic and offensive epithets against other attorneys).

The Committee cites another case concerning attorney misconduct more egregious than that of Ms. Demetriades, *In re Gordon*, 780 F.3d 156 (2d. Cir. 2015), where the Court imposed a two-month suspension. In *Gordon*, the Committee found that Gordon had (i) filed nearly identical "summary judgment" motions in at least nine cases that were not authorized by any rule of appellate procedure; (ii) failed to comply with an April 2011 order directing him to either withdraw the summary judgment motions or explain their legal basis; (iii) failed in 17 cases to file scheduling notification letters, in violation of the Court's rules; (iv) failed in 11 cases to comply with deadlines imposed by the Court, resulting in the dismissal of two cases; and (v) failed to oppose the Government's motion for summary affirmance in at least one case. In addition, the Committee found that Gordon's explanations for his failure to comply with the April 2011 order were "inconsistent, disingenuous, and lacking in credibility," and that his lack of candor during the Committee's hearing violated Rule 3.3(a)(1). *Id.* at 157.

Thus, there was a significant aggravating factor in Gordon's case, which factor is absent in the instant case. In short, Gordon did not cooperate with the Committee, and in light of his lack of candor at the Committee's hearing, the Court determined to impose a two-month suspension. Significantly, the Court stated that the underlying conduct, by itself, would likely warrant no more than a reprimand. *Id.* at 161. Notably, the Court cited *Matter of Koop*, 219

A.D.2d 359, 360–61 (2d Dep't 1996) (imposing Public Censure for neglecting a legal matter, misleading the client, and providing a false and misleading written response and testimony to the disciplinary committee). *Id.*

Unlike the attorney in *Gordon*, Ms. Demetriades testified candidly at the evidentiary hearing and, as the Committee acknowledges in its submission on sanctions, "Ms. Demetriades has appeared to comply with each of the Committee's requests during the adjudication of this matter." Comm. Br. at 5. Accordingly, the two-month suspension imposed on Gordon is distinguishable and *Gordon* provides further support for the imposition of no more than a reprimand in the instant case.

Finally, the Committee cites cases imposing discipline on criminal defense attorneys that provide scant guidance concerning the determination of an appropriate sanction in Ms. Demetriades's case. For example, in *In re Flannery*, 186 F.3d 143 (2d Cir. 1999), the Second Circuit emphasized that the Sixth Amendment's guarantee of effective assistance of appellate counsel requires that defense attorneys in criminal cases prosecute appeals vigorously and diligently. The Court noted that criminal defendants, often imprisoned while their appeals are pending, depend on their attorneys to prosecute their appeals vigorously, and the vigorous prosecution of an appeal requires at a minimum the filing of a main appellate brief. Flannery caused the dismissal of his clients' appeals by failing to file such a brief, despite numerous opportunities to cure his default. He also ignored subsequent orders to show cause why he should not be subject to discipline for causing his client's appeal to be dismissed by default. In the circumstances, the Court imposed a two-year suspension. *Flannery*, 186 F.3d at 144, 146.

Similarly, *In re Aranda*, 789 F.3d 48 (2d Cir. 2015), where the Second Circuit imposed a public reprimand and an 18-month suspension for the attorney's neglect of multiple criminal

appeals, involved misconduct much more serious than the case at bar. Moreover, Aranda's case presented a number of aggravating factors: his prior disciplinary history, much of which also involved neglect of his clients' cases; the pattern of misconduct, involving multiple cases and covering a span of years; the fact that his defaults occurred in criminal appeals, where significant liberty interests were at risk; his continuing failure to take corrective action in a client's case where for more than two years no appeal had been opened; the substantial prejudice Aranda's defaults nearly caused another client; and Aranda's gross negligence in failing to properly respond to the Court's Order to Show Cause. *In re Aranda*, 789 F.3d at 59.

*Matter of Uzmah Saghir*, 2009 WL 4437951 (S.D.N.Y. Nov. 30, 2009), also cited by the Committee, provides even less guidance concerning the appropriate sanction for Ms. Demetriades. *Saghir* involved a criminal defense attorney who neglected matters and failed to communicate with clients. Further, it appears that the attorney engaged in an illegal and dishonest scheme to split fees with an inmate, who would refer fellow prisoners to the attorney to supposedly file motions seeking reduced sentences. When the Committee on Grievances commenced an investigation, the attorney repeatedly invoked her Fifth Amendment rights, which triggered adverse inferences and ultimately led to the attorney's disbarment. *Saghir*, 2009 WL 4437951 at *13.

EMERY CELLI BRINCKERHOFF & ABADY LLP
Page 13

## C. **Mitigation**

In addition to pertinent case law, the American Bar Association's *Standards for Imposing Lawyer Sanctions ("ABA Standards")* provides guidance in determining an appropriate sanction in attorney discipline proceedings (and is recognized in that regard by the New York Rules for Attorney Disciplinary Matters, 22 N.Y.C.R.R. Part 1240). We respectfully submit that the following *judicially recognized* factors constitute applicable mitigation in the case at bar:

1. Remorse (*See ABA Standards* § 9.32(l)).

Ms. Demetriades has ***unequivocally*** accepted responsibility, and apologized for, her misconduct. (Demetriades Aff. at ¶ 3).[4]

2. Cooperation (*See ABA Standards* § 9.32(e)).

Ms. Demetriades has fully cooperated with the Committee on Grievances' investigation and with the proceedings before the Court, and has complied with each of the Committee's and the Court's requests during the investigation and adjudication of this matter. (Demetriades Aff. at ¶ 4); Comm. Br. at 5 ("Ms. Demetriades has appeared to comply with each of the Committee's requests during the adjudication of this matter.").

3. Timely good faith effort to make restitution or to rectify the consequences of misconduct (*See ABA Standards* § 9.32(d)).

Ms. Demetriades has made a timely good faith effort to rectify the consequences of her misconduct. Specifically, she has made efforts to resolve the case management issues that resulted in her Rule violations. There have been no orders imposing sanctions since prior to the onset of these disciplinary proceedings. She has dramatically reduced the number of cases pending in the Court to five cases, and there are notifications of settlement in two of the

---

[4] "Demetriades Aff. at ¶ __" refers to the Affidavit of Tara Demetriades, dated April __ , 2019, appended to this submission as Exhibit A.

EMERY CELLI BRINCKERHOFF & ABADY LLP
Page 14

remaining five cases. She has not filed any new cases in the Court since May 14, 2018. (Demetriades Aff. at ¶¶ 5 and 6).

With respect to restitution, Ms. Demetriades strongly believes that none of her clients suffered financial harm as the result of her misconduct. (Demetriades Aff. at ¶ 8).

4. Absence of a dishonest or selfish motive (*See ABA Standards* § 9.32(b)).

Poor case management, rather than a dishonest or selfish motive, caused Ms. Demetriades' Rule violations. (Demetriades Aff. at ¶ 7).

5. Personal or emotional problems (*See ABA Standards* § 9.32(c)).

During much of the period in which Ms. Demetriades committed the aforementioned Rule violations, she suffered from personal and emotional problems, particularly in connection with the illnesses and deaths of her beloved grandmother and her long-time canine companion of more than 14 years, Mr. Malone. Although not an excuse, Ms. Demetriades's extreme stress contributed to instances of discourteous conduct and the finding that she misled the Court concerning her employment of Marilyn Pierre, Esq. Ms. Pierre had been hired because Ms. Demetriades had been attempting to balance the medical care Mr. Malone required in Florida in conjunction with her existing case obligations in New York. Ms. Demetriades's clients were very understanding during this difficult period and never complained about her performance. Unfortunately, Ms. Demetriades did a poor job of keeping the Court equally informed, which she sincerely regrets. (Demetriades Aff. at ¶ 9).

6. Character evidence (*See ABA Standards* § 9.32(g)).

Notwithstanding the above, Ms. Demetriades respectfully submits that she has a reputation in the legal community for honesty and integrity. Notably, she has held leadership positions in the ABA, including co-chair of the Publications Subcommittee of the Section of

EMERY CELLI BRINCKERHOFF & ABADY LLP
Page 15

Litigation, Mass Torts Committee, and being a founding co-editor of the *Mass Torts Newsletter*, which received numerous accolades from the ABA during the many years in which she held her co-editorial and co-chair positions.  (Demetriades Aff. at ¶ 10).

## Conclusion

In sum, based upon relevant case law precedents, properly understood, and the judicially recognized mitigating factors present in this matter, we respectfully request, on behalf of Tara Demetriades, that the Court impose no more than a public reprimand.

Thank you for your consideration of this submission.

Respectfully submitted,

Hal R. Lieberman

cc:   Randall W. Jackson, Esq. (by email)

Tara Demetriades, Esq. (by email)